UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| STAGE PRESENCE INCORPORATED, | : | Case No. 12-10525 (MEW) |
| Debtor. | : | |

---

| | | |
|---|---|---|
| MUSIC MIX MOBILE, LLC, JEFF SHAW PRODUCTIONS, INC., ONE FOOT PRODUCTIONS, LLC, V.I.P. PROMPTING CORPORATION, IDEA ASYLUM PRODUCTIONS, INC., KENIGMA, INC., EAST SHORE SOUND, INC., WEUSI BARAKA CHAPMAN, LLOYD JORDAN AND GEORGE M. BERA, | : | |
| Plaintiffs, | : | |
| -against- | : | Adv. Pro. No. 15-01392 (MEW) |
| ALLEN NEWMAN, MATTHEW WEINER, STAGE PRESENCE, INC., ONE FOR EACH ISLAND LTD., GREGORY MARQUETTE and "XYZ CORP.", being the fictitious name of one or more entities, | : | |
| Defendants. | : | |

---

**MEMORANDUM DECISION DISMISSING CERTAIN CLAIMS
AND DENYING MOTIONS TO DISMISS OTHER CLAIMS**

A P P E A R A N C E S:

THE LAW OFFICE OF KERRY E. CONNOLLY, ESQ.
New York, New York
   Counsel for the Plaintiffs
    By:  Kerry E. Connolly, Esq.

SHAFFERMAN & FELDMAN LLP.
New York, New York
   Counsel for Debtor
    By:  Joel Shafferman, Esq.

ROBINSON BROG LEINWAND GREENE GENOVESE
& GLUCK P.C.
New York, New York
    Counsel for Matthew Weiner
    By:  Robert M. Sasloff, Esq.
         John D. D'Ercole, Esq.

THE LAW OFFICE OF JOHN CARLSON
Merrick, New York
    Counsel for Allen Newman
    By: John Carlson, Esq.

**MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion to dismiss filed by Debtor Stage Presence Incorporated and by individual defendants Allen Newman and Matthew Weiner. For the reasons set forth below the Court will dismiss some claims but will allow others to proceed.

**Background**

This case arises out of a televised program that was held in May 2010 to benefit a charity named Childhelp. Plaintiffs allege that they were not paid for the audio, editing, teleprompter, music mixing and other services they provided in connection with the program. The defendants include Stage Presence Incorporated (the chapter 11 debtor), another entity named One for Each Island Ltd. ("**OFEI**") and the three individual producers of the benefit program: Allen Newman, Matthew Weiner and Gregory Marquette. Complaint ¶¶ 11-26.[1]

Plaintiffs allege that OFEI may never have actually existed, but that in early 2010 OFEI entered into a contract with Childhelp under which OFEI agreed to "provide the services" of Marquette, Newman and Weiner "as Producers" for the benefit program. Weiner signed the agreement on behalf of OFEI and listed his title as "Producer." OFEI also entered into a letter

---

[1] Citations to the "Complaint" are to the revised amended complaint filed on March 3, 2016 [Docket No. 21].

agreement with BET Event Productions LLC that outlined terms for the production and telecast of the benefit program. The letter agreement was on the letterhead of BET and was addressed to Newman and Weiner "c/o One From Each Island, Ltd." Weiner signed the letter agreement on behalf of OFEI, again listing his title as "Producer." *Id.* ¶¶ 34-36, 43-45 and Exhibits 17, 20.

Newman owns substantially all (if not all) of the equity in Stage Presence. How and why Stage Presence got involved in the production arrangements is not clear. Plaintiffs allege that Stage Presence hired Plaintiffs to provide services in connection with the benefit program. *Id*. ¶¶ 17-26. Stage Presence does not dispute that it has contractual liabilities to some or all of the Plaintiffs, though the details and amounts are yet to be decided.

Plaintiffs have asserted three separate theories of contract liability against OFEI, Newman, Weiner and Marquette. The first theory is that Newman, Marquette, Weiner, OFEI and Stage Presence are jointly liable for the contract liabilities of Stage Presence on a "partnership by estoppel" theory. The second theory is that Plaintiffs are third party beneficiaries of certain provisions in the Childhelp contract and the BET letter agreement. The third theory is that OFEI, Newman, Weiner and Marquette should jointly share in the contract liabilities of Stage Presence on "alter ego" grounds.

Plaintiffs also accuse Newman and Weiner of fraud, and accuse Weiner of aiding and abetting fraud. They further contend that Newman was unjustly enriched and breached fiduciary duties when Newman caused post-bankruptcy business opportunities to be pursued by other companies that Newman controlled instead of being pursued by Stage Presence. Finally, two individual Plaintiffs (Weuis Baraka Chapman and Lloyd Jordan) allege that Stage Presence, Newman and Weiner were statutory "employers" with liability for wages that are owed to them. Plaintiffs have abandoned a separate claim alleging tortious interference with contract.

3

Newman, Weiner and Stage Presence have moved to dismiss. There is no affidavit of service on file with respect to OFEI and Marquette, and the certificate of service of the revised amended complaint indicates that Stage Presence, Newman and Weiner were the only defendants who were served with that pleading. *See* Docket No. 23. Plaintiffs' counsel confirmed on July 14 that she has not yet made efforts to complete service on OFEI. Counsel informed the Court that Marquette may have received a discharge in a personal bankruptcy case.

### Jurisdiction and Ability to Render a Final Decision

Plaintiffs, Stage Presence, Newman and Weiner agree that this Court has "core" jurisdiction over claims against Stage Presence. 28 U.S.C. § 157(c)(2). They do not agree as to whether other claims raise "core" issues, but they agree that the claims are at least "related to" the pending bankruptcy case, and they have consented to a final determination of the claims by this Court. *See* Docket Nos. 39, 40, 41, 43. These consents are sufficient as a statutory and constitutional matter to permit this Court to render a final decision. 28 U.S.C. § 157(c)(2); *Wellness International Network, Ltd., et al. v. Sharif*, 575 U.S. ___ (2015).

### Pleading Standards

Rule 7012 (b) of Federal Rules of Bankruptcy Procedure, which incorporates Federal Rule of Civil Procedure 12(b)(6), permits a bankruptcy court to dismiss an adversary proceeding if a complaint fails to state a claim upon which relief may be granted. *See* FED. R. BANKR. P. 7012(b). In reviewing a motion to dismiss the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). However, the factual allegations in a complaint must be supported by more than mere conclusory statements.

4

*Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action." *Id*. (citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "show[n] … that the pleader is entitled to relief." *Id*. at 679; *see also id*. at 682 (allegations in a complaint are rejected where there is an "obvious alternative explanation" for the conduct alleged that is more "likely") (internal quotation marks and citation omitted).

Rule 7009, which incorporates Rule 9(b) of the Federal Rules of Civil Procedure, imposes added requirements as to Plaintiffs' fraud claims. "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)). While "the fraud alleged must be stated with particularity ... the requisite intent of the alleged [perpetrator] of the fraud need not be alleged with great specificity." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996) (citations omitted); see also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other

5

conditions of a person's mind may be alleged generally."). Nevertheless, a plaintiff "'must allege facts that give rise to a strong inference of fraudulent intent.'" *Lerner*, 459 F.3d at 290 (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir.1995)).

### Governing Law

The parties have addressed the claims on the presumption that all of them are governed by New York law. Stage Presence is a New York corporation, so it is reasonable to apply New York law in assessing the "alter ego" claims. Plaintiffs allege that Chapman and Jordan were New York residents who were hired in New York, so there is reasonable support for the alleged applicability of the New York Labor Law to their claims to recover wages. Newman allegedly diverted corporate opportunities belonging to a New York corporation, so if Plaintiffs were able to pursue such claims they would be governed by New York law. It is not so clear, however, just why New York law would govern the other asserted claims.

As to the alleged contracts between Plaintiffs and Stage Presence: Stage Presence is a New York corporation with a New York office. However, only five of the ten named Plaintiffs are located in New York. Complaint ¶¶ 12, 17-26. The charity event for which Plaintiffs provided services was held in Washington, DC. Plaintiffs allege that they were hired by Mr. Kelman (who was hired to be a producer for the program), and they allege that Chapman and Jordan were hired in New York. *Id.* ¶ 173. However, no surrounding circumstances are alleged regarding the time or place of the alleged contract formations with other Plaintiffs.

As to the alleged contractual liability of Newman and Weiner: Plaintiffs allege that defendants should be liable on a partnership-by-estoppel theory, but they have not alleged that representations of "partnership" were made in New York (as opposed to other locations), or that any person ever was told that a New York partnership existed. Similarly, Plaintiffs claim third

6

party beneficiary rights under the Childhelp contract and the BET letter agreement, but there is no explanation as to why New York law should govern those contracts or should govern the third party beneficiary claims. Neither contract includes a choice of law provision. The Childhelp contract is between Childhelp (a charity whose location is not specified) and OFEI (an Anguilla Corporation); the place of execution is unknown. The BET letter agreement is between BET (a Delaware limited liability company with offices in Washington, DC) and OFEI (an Anguilla Corporation); the place of execution of the agreement is also unknown.

As to the fraud and aiding and abetting claims: Plaintiffs allege that Newman made false statements (to Kelman) about the status of financing for the benefit program, but at least some of the allegedly fraudulent statements were made in Washington, D.C. and in Anguilla. *Id.* ¶¶ 53, 55, 70. Various emails are cited as examples of allegedly fraudulent statements, but how and why those constitute fraud governed by New York law (as opposed to the laws of another jurisdiction) is not explained.

Nevertheless, the parties have cited exclusively to New York law in debating the merits of the claims and appear to agree that New York law sets forth the governing standards. The Court does not know if this is because the parties agree that the claims actually are governed by New York law or because they agree that New York law is substantially the same as the laws of the other jurisdictions that might apply. However, since the parties apparently are in agreement on the point the Court will address the merits of the asserted claims under New York law.

### Discussion

**1.    The Motion by Stage Presence**

Stage Presence has moved to dismiss the breach of contract claims that have been asserted against it on the ground that those same claims are already set forth in proofs of claim

7

that are subject to the claims allowance process. However, one of the forms of relief that Plaintiffs seek is an order that would pierce the corporate veil and that would hold one or more other defendants liable for the debts owed by Stage Presence. It is well established that a "[c]laim for the imposition of liability against a defendant that rests upon allegations that such defendant is liable to the plaintiff because it is an alter ego of another entity who has not been joined as a defendant, renders the non-joined entity a necessary party." *Mannucci v. Missionary Sisters of Sacred Heart of Jesus*, 941 N.Y.S.2d 493, 494 (2012). Since Stage Presence is a necessary party to a claim where alter ego liability is sought, its motion to dismiss should be denied (unless the alter ego claim itself is dismissed). The Court will consolidate any further proceedings in this case with proceedings relating to the proofs of claim to avoid duplication.

**2.    The Contract Claims Against Newman and Weiner**

Plaintiffs relied on a number of different theories to support their contract claims against Newman and Weiner. Many of those contentions lack merit. However, certain of the allegations are sufficient to permit the contract claims to proceed against Newman.

**A.    Alleged Partnership by Estoppel**

Plaintiffs argue that Newman, Weiner, OFEI and Stage Presence held themselves out as partners in a partnership, and thus should be treated as a partnership under theories of partnership by estoppel. N.Y. McKinney's Partnership Law § 27. However, Plaintiffs cannot invoke the theory of partnership by estoppel unless the defendants actually represented, to Plaintiffs themselves, that such a partnership existed and would be the contracting party. *Id.; Impastato v. De Girolamo*, 459 N.Y.S.2d 512 (Sup 1983), order aff'd, 464 N.Y.S.2d 382 (2nd Dept. 1983) (no basis on which to impose vicarious liability upon one doctor for the conduct of a second doctor on a theory of partnership by estoppel where the first doctor did not represent or hold out

8

the second doctor as his partner). If a party represents that a partnership exists, and a second party relies on that statement in entering into an arrangement, then the first party is estopped from denying that the partnership exists. N.Y. McKinney's Partnership Law § 27; *Fleet Bank NH v. Royall*, 630 N.Y.S.2d 559 (2nd Dept. 1995).

Here, the Complaint does not allege that Plaintiffs believed that a partnership existed, or that any representation was made to Plaintiffs themselves (during contract formation) that the individual defendants were "partners" in any way, or that the Plaintiffs entered into contracts with the expectation that a partnership would bear the liability for payment. There are allegations that Newman, Weiner and Marquette allegedly held themselves out as partners in their dealings with Childhelp and others, *see* Complaint ¶¶ 15, 34, 99, but there are no similar allegations that any such representations were made during contract discussions with Plaintiffs. There is also an allegation that Newman, Weiner and Marquette sent a letter to Plaintiffs and others in May 2010 (after the benefit program was complete and long after the contracts had been formed) in which Newman, Marquette and Weiner described themselves as "Partners" in One for Each Island, Ltd., and in which they described payment problems due to a failure by a funding partner to fulfill its obligations. However, that letter post-dated the alleged contract formation, and it therefore is not sufficient to support a partnership-by-estoppel claim. *First American Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 358-360 (S.D.N.Y. 1997); *Ranieri v. Leavy*, 180 A.D.2d 723, 725 (2d Dept. 1992). Furthermore, the letter was on the joint letterhead of Stage Presence and other entities, and there is nothing in that letter (which is attached to the Complaint) that suggests that a partnership (as opposed to Stage Presence) would owe obligations directly to Plaintiffs.

The Complaint therefore fails to state a claim on a "partnership by estoppel" theory.

9

B.      Alleged Third Party Beneficiary Liability

Plaintiffs contend that they are intended third party beneficiaries of provisions in the Childhelp Contract and the BET letter agreement. Paragraph 4(c)(ii) of the Childhelp contract stated that "[a]ll employees hired by the Producers shall be paid industry standard wages to insure the highest degree of professionalism in work, work-produce, conduct and in issues of safety." In the BET letter agreement, OFEI agreed that it would "[m]ake payments or cause to be paid all necessary expenses related to local event marketing, talent, production, travel, live event transmission and related services." Plaintiffs contend that through these provisions OFEI agreed to pay the Plaintiffs for their work and that Plaintiffs are third party beneficiaries who are entitled to enforce those contractual promises. Complaint ¶¶ 39, 43-44, 119-24. Plaintiffs also contend that Weiner executed the Childhelp contract and the BET letter agreement in his personal capacity, and therefore is personally liable for the obligations set forth therein. *Id.* ¶¶ 7, 37, 45. There are three insurmountable defects in these contentions.

First, Weiner plainly did not execute the two contracts in his "personal" capacity. The contracts were attached to the Complaint and incorporated in it, and each contract clearly lists OFEI (not Weiner) as the contracting party. The signature blocks also clearly show that Weiner signed the agreement on behalf of OFEI, not in a personal capacity. The contention to the contrary is plainly wrong.

Second, the Childhelp contract referred only to the payment of "wages" to "employees." There is no reasonable theory on which that contract could be invoked in support of the claims asserted by the Plaintiffs who are not "employees" and whose claims are not wage claims.

Third (and most importantly), as a matter of law Plaintiffs do not qualify as third party beneficiaries under either agreement. Under New York Law, it is the intention of the parties (as

set forth in the contract) that determines third-party-beneficiary status. *See MK West Street Co. v. Meridien Hotels, Inc.*, 584 N.Y.S.2d 310, 313 (1st Dept. 1992). Absent an intent to benefit a third party, the third party is merely an incidental beneficiary with no right to enforce the contract. *Port Chester Elec. Constr. Corp v. Altas*, 40 N.Y.2d 652, 655 (1976). It is essential not merely that the contract will operate for the benefit of the third person, or that a third person relies upon the performance thereof; instead, the agreement under which the third party claims must clearly express an intention to assume a contractual duty directly to him or her. *See Artwear, Inc., v. Hughes*, 615 N.Y.S.2d 689, 692-93 (1st Dept. 1994); *see also Strauss v. Belle Realty Co.*, 469 N.Y.S.2d 948, 950 (2nd Dept. 1983). Third party beneficiary rights do not exist unless the contract shows that the parties intended to confer, upon third parties, the legal right to enforce the contract. *Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC,* 692 F.3d 42, 52-53 (2d Cir. 2012).

Here, the provisions in both the Childhelp and the BET did not refer to Plaintiffs and did not express any intent to confer contractual rights on the Plaintiffs themselves. The cited provision in the BET letter agreement just allocated financial responsibilities between OFEI and BET. The cited provision in the Childhelp contract merely established wage standards for the stated purpose of insuring "professionalism" in the performance. No provision of the contracts could reasonably be interpreted as conferring contractual rights directly on Plaintiffs. *See, e.g., Alicea v. City of New York*, 145 A.D.2d 315 (1st Dept. 1988) (contract requiring a party to pay minimum wages and maintain good working conditions in compliance with the labor law just set standards for the contractor to follow and did not create independent contractual rights that employees could enforce).

### C.    Alter Ego/Veil Piercing

The third theory upon which Plaintiffs seek to impose contractual liability on Newman, Weiner and Marquette is that Stage Presence is merely their alter ego and that the corporate veil should be pierced.  Piercing the corporate veil requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. N.Y.S. Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993).

According to the Complaint, Newman owned and controlled Stage Presence, used it to conduct his own affairs, ignored corporate formalities and caused Stage Presence to engage in transactions with Newman and with affiliated entities for which no consideration was paid. Complaint ¶¶ 100-101.  The Complaint also alleges that Newman ignored corporate distinctions between Stage Presence, OFEI and other entities with which Newman is affiliated, including by listing OFEI's obligations as liabilities of Stage Presence in the list of liabilities filed by Stage Presence in its chapter 11 case.  *Id.* ¶¶ 41, 81, 83, 101.  These allegations are sufficient to withstand Newman's motion to dismiss the claim that he should be held liable for the contract obligations of Stage Presence on an alter ego/veil piercing theory.

However, there is no allegation that Weiner and Marquette were officers, directors, employees or owners of Stage Presence.  Plaintiffs argued in response to Weiner's motion to dismiss that although Weiner is not the owner of Stage Presence, he is an "equitable owner" such that an alter ego claim can be made against Weiner as well.  But to be an equitable owner of a corporation, an individual must "exercise considerable authority over [the corporation] … to the point of completely disregarding the corporate form and acting as though [its] assets [are] his alone."  *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1051 (2d Cir. 1997).  There are no

12

allegations in the revised amended complaint suggesting that Weiner had any such control over the finances and assets of Stage Presence. The complaint actually alleges to the contrary, as it incorporates (by reference) a partial finding in another lawsuit to the effect that Newman had complete control over the finances of Stage Presence.

Plaintiffs also allege that it was inherently "unfair" for the producers to enter into contracts that gave the benefits of the production to OFEI but that put the burdens (production costs) on Stage Presence. Complaint ¶¶ 5, 6, 78-79, 84. However, if the contention is that Newman and others caused Stage Presence to enter into agreements that were unfair to Stage Presence, then any claim for redress for that alleged wrong would belong to Stage Presence and its bankruptcy estate, not to Plaintiffs. The same conduct is also said to represent a "misuse" of corporate forms. *Id*. ¶¶ 78-79. As a general matter, however, it is not a "misuse" of corporate forms to say that a contract liability belongs only to the contracting party.

Contracts are matters of agreement and voluntary action. If Plaintiffs had wanted greater assurances that Stage Presence would pay them, they should have asked for such assurances. If Plaintiffs had wanted financial backing from other parties, they should have asked for guarantees or other promises of third party support. Plaintiffs did not do so. To the extent Plaintiffs allege that Newman caused Stage Presence to incur liabilities that were beyond its means or to engage in business for which Stage Presence was not reasonably capitalized, that argument is appropriately considered in the context of the alter ego claim against Newman. Otherwise, in the absence of fraud, Plaintiffs are stuck with the party with whom they contracted and with access to whatever resources that party has. The Court is not aware of any contractual theory that would permit the Court to impose liability on OFEI, Newman, Weiner or Marquette merely because it would arguably be more "fair" to do so.

### D.     Other Issues

Newman has argued separately that the contract claims should be dismissed because the Complaint is not sufficiently specific about the contract terms. *See* Docket No. 30 at 4. However, Stage Presence (Newman's company) has acknowledged the obligations owed to Plaintiffs.  Furthermore, the complaint attaches a copy of a Judgment on Partial Findings in a separate action brought by other plaintiffs that includes a reference to admissions, by Newman himself, of contractual obligations owed by Stage Presence to seven of the ten named plaintiffs. *See* Complaint, Exhibit 2, ¶¶ 17-19.  This is not a case where there is any serious question as to whether contracts existed; rather, the dispute is whether any party other than Stage Presence is obligated to pay the debts owed to Plaintiffs.  Further details about the contract arrangements, to the extent relevant, can be obtained through discovery and do not require further amendments to the pleadings.

### 3.     Fraud and Aiding and Abetting Claims

Plaintiffs argue that Newman made false representations about the status of funding for the program, and that Weiner was aware of those misrepresentations and failed to correct them. Their conduct allegedly constituted fraud and (in Weiner's case) aiding and abetting fraud.

### A.     Alleged Misrepresentations by Newman

Plaintiffs have not identified a single statement made by Newman to Plaintiffs themselves regarding the status of financing for the benefit program.  Instead, Plaintiffs point to statements that Newman allegedly made to Allen Kelman, a producer for the show who was hired by Newman and who thereafter arranged for the services that Plaintiffs provided.  Plaintiffs have identified several specific instances in which misleading statements were communicated to Kelman.  Complaint ¶ 53, 55, 62, 65, 66.  To support the use of these representations as a basis

for a fraud claim, Plaintiffs rely on the concept of "indirect reliance." The indirect reliance doctrine states that "a claim for fraud may lie even when a plaintiff does not directly rely on a fraudulent representation made by the defendant, if (1) the plaintiff received the information from someone who had received it from the defendant, and (2) the defendant intended the misrepresentation to be conveyed to [the plaintiff]." *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994) (citations omitted).

Here, Plaintiffs have alleged that Newman intended that Kelman would communicate the statements to Plaintiffs so that they would continue working on the show. Complaint ¶ 73. However, the Complaint is devoid of any allegation that Kelman actually did so. There is not a single instance alleged in which any Plaintiff ever sought, obtained, received or considered any statement of any kind with respect to the source of funding for the program or the status of that funding. In the absence of such an allegation the "indirect reliance" claim cannot be sustained.

Plaintiffs also allege that the employment of a "paymaster" by Stage Presence amounted to a false representation by Newman that he actually had arranged fully-committed and available funding for the benefit program. *Id*. ¶ 62. This allegation is a non-sequitur. Plaintiffs acknowledge that the paymaster made some payments, using funds that Stage Presence made available from its general resources. Nothing about the employment of a paymaster could reasonably support the alleged "misrepresentation."

Furthermore, the Complaint does not allege that Plaintiffs relied on any alleged assurances about the finances for the program. In fact, the Complaint does the opposite: it alleges affirmatively that it is "customary" for service providers to accept offers of employment based on a phone call and a handshake, with no further inquiry. *Id.* ¶¶ 50-51. Alleging a

15

custom of casual indifference is a far cry from alleging the kind of "reliance" that is necessary to support a fraud claim.

### B. The Omission Claims Against Weiner

The Complaint does not identify any specific misrepresentations made by Weiner. Instead, it alleges that Weiner was aware of misrepresentations made by Newman and that Weiner failed to correct them. *Id.* ¶¶ 7, 53, 93. These allegations are deficient for two reasons.

First, as noted above the Complaint fails to identify any misrepresentations that actually were communicated to Plaintiffs. As a result, there was no misrepresentation that Weiner could have been obligated to correct.

Second, "omissions" are actionable only if a person has an affirmative duty to speak. *Ozelkan v. Tyree Bros. Envtl. Servs., Inc.,* 29 A.D.3d 877, 878 (2d Dept. 2006). The Court dismissed a prior version of the Complaint that had failed to include sufficient allegations about facts that would have imposed such a duty on Weiner. The current version of the Complaint does nothing to correct this deficiency: it simply alleges that a duty existed, without any supporting facts. Complaint ¶ 93. There is no allegation that Weiner held a fiduciary relationship with respect to Plaintiffs, or that Weiner was aware that any of the Plaintiffs had a mistaken belief as to the status of the financing.

### C. The Pleaded Fraud Claims Are Merely Duplicative of the Contract Claims

The fraud claims are deficient for an additional reason: namely, as pleaded they are merely duplicative of the breach of contract claims. A fraud claim could be asserted separately if Plaintiffs alleged that they were fraudulently induced to enter into a contract. *Cf. MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 233 (1st Dept. 2011). However, the Complaint does not allege that Plaintiffs asked about the program's finances and were

16

fraudulently induced to enter into contracts based on misrepresentations about the finances. Instead, the Complaint alleges that Plaintiffs entered into contracts without asking any questions. These allegations do not support a claim of fraudulent inducement. The alleged wrong is that the contractual obligation (payment) was not completed, and the allegations of the Complaint are not sufficient to permit this breach of contract claim to be repackaged as a fraud claim. *OP Solutions, Inc. v. Crowell & Moring, LLP,* 900 N.Y.S.2d 48, 49 (1st Dept. 2010).

### D.     The Aiding and Abetting Claim is Deficient

The accusation that Weiner aided and abetted fraud is deficient for the reasons set forth above. There is no proper allegation that a fraud was committed, and therefore no proper allegation that Weiner could have aided and abetted such a fraud. In addition, Weiner's alleged conduct (silence) is not a sufficient basis on which to allege the sort of substantial assistance that is needed to support an aiding and abetting claim. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000).

### 4.     The Unjust Enrichment Claim

Plaintiffs assert an unjust enrichment claim against Newman on the ground that he allegedly diverted funds that should have been paid to Stage Presence. However, there is no allegation that Newman received something of value that belongs to Plaintiffs themselves. All that Plaintiffs argue is that Newman took corporate opportunities that belonged to Stage Presence. This claim belongs to Stage Presence and its estate, not to Plaintiffs. Plaintiffs have filed a separate motion seeking permission to pursue this claim on behalf of the estate, but the hearing on that motion has been deferred. The Court will defer ruling on this claim until such time as it rules on the pending motion for permission to pursue the claim, but will bar pursuit of the claim by Plaintiffs unless and until such motion is granted.

**5.    NYLL Violation Claims Asserted Against Newman and Weiner**

Plaintiffs' argument is that Chapman and Jordan were employees who were put on the Debtor's payroll, and thus, the Debtor is liable under New York Labor Law for failure to pay wages. Plaintiffs further contend that Newman and Weiner are each personally liable because they qualify as employers under N.Y. McKinney's Labor Law § 190 (3), which defines an "employer" to "include any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade business, or service." N.Y. McKinney's Labor Law § 190 (3).

In determining whether a person is an "employer" for purposes of NYLL, courts use an "economic reality" test similar to that used under Fair Labor Standards Acts (FLSA). Under the "economic reality" test, courts consider whether the alleged employer "(1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). It is well established that a corporate executive or officer may be held individually liable as an "employer" under the FLSA. *Id*, at 139.

In light of these principles, there is little question that Newman may qualify as an employer under the NYLL. The Complaint alleges that Newman had the power to hire and fire members, to control the conditions of employment, to determine the method of payment, and to exercise operational control over Plaintiffs. Thus, the motion to dismiss the NYLL violation claim against Newman should be denied.

Plaintiffs' NYLL violation claim against Weiner makes only conclusory allegations that Weiner had the authority over Plaintiffs to direct their actions, and fails to plead any facts

18

regarding the elements listed by the *Herman* court.  On the other hand, Plaintiffs allege that a separate action in the District Court was allowed to proceed against Weiner on the same "employment" theory and that the District Court in that case denied a motion for summary judgment on the employment issue.  While the allegations are thin, the Court will allow them to proceed in light of the prior litigation involving similar parties and the prior rulings made in the District Court action on the same points.

## Conclusion

For the foregoing reasons, Plaintiffs may proceed with their contract claims against Stage Presence and with their contention that Newman is liable for such contract obligations on alter ego/veil piercing theories.  The other contract claims, and the claims for fraud and aiding and abetting fraud, are dismissed.  The ruling on the unjust enrichment claim will be deferred until after a ruling on Plaintiffs' separate motion for permission to pursue that claim.  The claims on behalf of Chapman and Jordan to recover wages under New York law may proceed.

Dated: New York, New York
        July 19, 2016

**s/Michael E. Wiles**
Michael E. Wiles
United States Bankruptcy Judge
